OPINION OF THE COURT
Lewis L. Douglass, J.
The trial which resulted in this defendant’s conviction of conspiracy to sell heroin clearly established that the defendant was a major drug distributor. Undercover police officers, through contacts made at the street level, eventually purchased drugs from the defendant, during a four-month period, involving payments of $26,000. When the defendant’s apartment was raided, immediately preceding his arrest, over $400,000 in small bills were found under the flooring of the apartment and another $50,000 was found in a safe. At the time of sentence, when this court imposed the maximum prison term, the District Attorney’s office advised the court that following the defendant’s arrest there was a significant reduction in the available drugs on the streets in the section of Brooklyn where the defendant operated.
*449 THE PENAL LAW PROVISION REQUIRING RESTITUTION TO CRIME VICTIMS IS APPLICABLE TO DRUG DEALERS
In addition to imposing a prison sentence, Trial Judges are required under section 60.27 of the Penal Law to consider whether a defendant should be ordered to make restitution to crime victims. (People v Turco, 130 AD2d 785.) In most cases the court will know the specific victim and how much he or she lost. The question to be decided here is whether Penal Law § 60.27, requiring the making of restitution, is applicable to drug dealers, since in those cases a specific victim is not readily identifiable.
It is beyond debate that drug dealers create victims. Victims are those whose homes are robbed by addicts seeking to support their habit. Victims are parents who see the lives of their children destroyed. Victims are all of us who must bear the enormous cost of law enforcement incurred in the effort to combat the spread of drugs.
All crimes, however, create those victims who are indirectly harmed by criminal activity. Section 60.27 of the Penal Law contemplates victims who are directly injured by criminal activity.
It is the drug addict, though he or she cannot be.identified, who is the direct victim of the drug dealer. Just as the robber knows that his victim will suffer loss of property and possible physical injury the drug dealer knows the consumer of his product will sustain injury to his health, and as that consumer turns into an addict, his life will continue to deteriorate.
In discussing the gravity of drug trafficking the Court of Appeals has specifically found that "[t]his debilitation [i.e., the addiction] of men, as well as the disruption of their families, the Legislature could also lay at the door of the drug traffickers”. (People v Broadie, 37 NY2d 100, 113.)
Not only is it clear that addicts are the drug dealers’ victims, but it would be improbable to conclude that the Legislature, in adding section 60.27 to the Penal Law, intended to exclude from its sanctions drug dealers, who must be viewed as among the most serious criminal offenders. Moreover, the Legislature has specifically directed in Penal Law § 5.00 that the Penal Law is not "to be strictly construed” but should be "construed according to the fair import of [its] terms” and "to promote justice and effect the objects of the law. ” (Emphasis added.) That general legislative mandate, *450 to read the Penal Law to "promote justice”, was specifically reiterated in the legislative findings to an amendment of section 60.27 where the Legislature said: " 'The legislature hereby finds and declares that it is the policy of this state to encourage restitution by a person convicted of a criminal offense to the victims of his or her criminal activities in appropriate cases and to the extent that the defendant is reasonably able to do so. This act [amending subd. 1] shall be interpreted and administered to effectuate this policy.’ ” (L 1983, ch 397, § 1, set forth in Historical Note, McKinney’s Cons Laws of NY, Book 39, Penal Law § 60.27, at 191.)
Although no New York court has utilized section 60.27 to order the payment of restitution by convicted drug dealers, the Southern District in US v Badalamenti (SD NY, June 26, 1987, No. 84 Civ-236) imposed restitution against several drug dealers. In so doing the court said:
"The importation of narcotic drugs into the United States unquestionably causes severe bodily injury requiring medical and psychiatric care and therapy, even though it is difficult to identify with precision the individuals who were injured by the particular narcotics imported by a particular defendant, absent being able to trace a direct sale.
"It seems to me appropriate * * * to call for the establishment of a fund of restitution which would be devoted to providing rehabilitation and care for persons injured by addition to narcotics.”
Having determined that addicts are the victims within the contemplation of Penal Law § 60.27, the next question is how to determine the amount of restitution.
THE DAMAGE CAUSED BY DRUG TRAFFICKERS
When the victims are drug addicts who cannot be specifically identified it is impossible to determine the precise amount of medical expenses incurred by any single addict. Because drug addiction is so destructive to a person’s general well-being, the medical and related costs incurred by the total number of addicts is an astronomical figure. For those who are treated by the most inexpensive method, that is, on an outpatient basis, the annual cost is $2,400.[1] For the untreated and unconnected addict no one really knows the cost. The most modest estimates, however, result in enormous amounts. For *451 example, it could be modestly assumed that any addict would face $500 of expenses in any year, as a result of either medical cost or loss resulting from his or her inability to maintain a job. Thus, over a five-year period each of the thousands of addicts in any city would sustain, by this most modest estimate, individual losses of $2,500. The loss caused by drug traffickers becomes even more dramatic when it is recognized that the loss sustained by individual addicts is only a small component of the total cost that society, at large, faces as a result of the 200,000[2] heroin addicts, and even more cocaine users in the City of New York alone. For example, in 1985, the New York City hospital system handled over 3,000 emergency room drug-related episodes. Thirty per cent of AIDS victims are intravenous drug users. In addition to these health costs, there is the enormous cost that flows from the relationship between drug addiction and violent crime. A 1983 study by the Division of Substance Abuse Services of the State of New York found that a daily heroin user committed an average of more than 200 nondrug crimes a year, including 12 robberies and 34 burglaries. As shown hereafter, this defendant’s operation placed drugs in the bodies of thousands of individuals. Thus, the actual loss he has caused would run well into the millions of dollars.
Since damage caused by drug traffickers is so enormous that no one dealer could realistically pay the actual amount of the damage he has caused, the restitution figure should have some relationship to the defendant’s capacity to pay, otherwise it could be so unrealistic, as to have no practical significance.
THE SIZE OF THE DEFENDANT’S OPERATION
At the time this defendant was arrested almost $500,000 in cash was seized, and the defendant is known to own two houses in the Fort Hamilton section of Brooklyn, one house in Staten Island, a car dealership in Puerto Rico and bank accounts in both the United States and Puerto Rico. In addition, the court has seen an affidavit of a narcotics investigator indicating that the defendant had 3 to 5 people working for *452 him as both street dealers and mid-level wholesalers, and that the defendant would only distribute heroin in bundles consisting of 100 packets. The trial testimony, moreover, made it clear that the defendant was involved in an ongoing operation and had customers other than these particular undercover operatives. Thus, it is clear that the defendant has taken in millions of dollars from this illegal activity.
DETERMINATION OF THE AMOUNT OF RESTITUTION
The six ounces of drugs seized at the time of the raid of the defendant’s apartment would have produced a minimum of 15,768[3] bags of heroin ready for street sale. In addition the undercover officers seized 2,200 bags which would have reached the street had they been purchased on the street. Assuming that 20 bags of this total of 17,968 would have reached an individual addict, the drugs intercepted by these particular undercover operatives would have reached 898 probable addicts. The court concludes, therefore, that it is reasonable to multiply that figure, 898, by the lowest annual costs to treat one addict on an out-patient basis, that is $2,400 per year. Under this calculation the court directs the defendant to make restitution of $2,155,200.
DRUG REHABILITATION AGENCY DESIGNATED BY THE MAYOR OF THE CITY OF NEW YORK SHALL COLLECT AND ADMINISTER THE RESTITUTION FUNDS
The New York State Legislature has recognized that as trial courts begin to have more experience with the concept of victim restitution, restitution arrangements will become increasingly more complicated than simply collecting a small amount of money from a defendant and forwarding it to a known victim. In 1984, the Legislature enacted CPL 420.10 (8) (a) which provides that the Mayor of the city shall designate an "organization other than the district attorney to be responsible for the collection and administration of restitution and reparation payments”. The District Attorney’s office, therefore, is directed to forward a copy of this decision to the *453 Mayor of the City of New York with the request that, pursuant to CPL 420.10 (8), he designate a drug rehabilitation agency to collect the restitution ordered herein, and that such funds be utilized by such agency to fund its rehabilitative programs.

. Estimate provided by Daytop Village.

. The statistics quoted are found in Current Drug Use Trends in New York City (June 1987) issued by the New York State Division of Substance Abuse Services, and Abuse in the Absence of Policy, Report to the Mayor, by Daytop Village, Inc., and the Greater New York Coalition on Drug Abuse.

. Six ounces diluted six times = 36 oz; 438 grains = 1 oz; 36 X 438 = 15,768 grains. The average weight of a glassine envelope of heroin is one grain.